**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
JAMYRON SANDERS              :    Civ. No. 3:20CV00250(SALM)
                              :
v.                            :
                              :
LIEUTENANT VISEAU, et al.    :    December 30, 2021
                              :
------------------------------x
```

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jamyron Sanders, a former inmate in the custody of the Connecticut Department of Correction ("DOC"),[1] filed this action as a self-represented party pursuant to 42 U.S.C. §1983, alleging that defendants violated his rights under the Eighth Amendment to the United States Constitution by using excessive force against him.[2] Defendants are all alleged to be current or former employees of the DOC, working at the time of the incident

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Sanders was released from custody and is now serving a term of Special Parole in the community. See Inmate Information, CONNECTICUT STATE DEPARTMENT OF CORRECTION, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=305755 (last visited Dec. 29, 2021).

[2] The Complaint and Amended Complaint originally included additional claims, but all other claims were dismissed on initial review. See Doc. #14 at 8.

at Carl Robinson Correctional Institution. See Doc. #12 at 3-4. Plaintiff is now represented by counsel. See Doc. #33.

Pursuant to Federal Rule of Civil Procedure 56(a), all defendants move for summary judgment on all of plaintiff's remaining claims. See Doc. #50. Plaintiff has not responded to defendants' motion. For the reasons set forth below, defendants' motion is **GRANTED.**

I.  BACKGROUND

Plaintiff filed his original Complaint on February 24, 2020, naming a number of defendants. See Doc. #1 at 1, 3-4. On initial review, the Court dismissed some claims, and allowed some to proceed to service. See generally Doc. #8. Plaintiff filed an Amended Complaint on May 5, 2020. See Doc. #12. On initial review of the Amended Complaint, the Court allowed one claim to proceed: an Eighth Amendment claim for excessive force, against defendants Visneau, Tyburski, Minggia, Barrett, Canales, Doyle, Huff, and Wisdom, in their individual capacities. See Doc. #14 at 8.

Counsel appeared for plaintiff on January 15, 2021, see Doc. #33, and discovery proceeded in the matter. After several extensions, discovery was closed on September 5, 2021, see Doc. #42, and defendants filed a motion for summary judgment on September 29, 2021. See Doc. #50.

The factual allegations of the Amended Complaint are

summarized in the Amended Complaint Initial Review Order, see Doc. #14 at 2-4, and are only briefly summarized herein. Plaintiff alleges that on October 21, 2019, while he was an inmate at the Carl Robinson Correctional Institution, he had a contact visit with his family, and that after the visit he was required to undergo a strip search, in accordance with normal procedure. See Doc. #12 at 4-5. After leaving the strip search, plaintiff alleges that he heard a voice call his name, and he turned his head, and was "immediately maced" in the face "with an entire can of pepper spray[.]" Id. at 6. Defendant Visneau then allegedly put plaintiff in a choke hold and slammed him to the ground, causing injuries. See id. In the Amended Complaint, plaintiff additionally alleged that "Lieutenant Tyburski sprayed him in the face and mouth with a chemical agent a second time when he was on the ground and passive and that all defendants repeatedly struck him in the back with their elbows and knees while he was on the ground struggling to breathe." Doc. #14 at 6. The Court permitted an Eighth Amendment excessive force claim against all defendants to proceed, based on these allegations. See id. at 6, 8.

Defendants now move for summary judgment, contending that plaintiff failed to exhaust his administrative remedies. See Doc. #50 at 6-11. Defendant Wisdom also moves for summary judgment on the ground that she was not involved in the use of

force underlying the Amended Complaint. See id. at 12-13.

## II. LEGAL STANDARD

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc., 310 F.3d at 286. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

Where a motion for summary judgment is unopposed, "the Court accepts as true all factual allegations in the admissible materials accompanying the motion for summary judgment, see Fed. R. Civ. P. 56(e), and assesses only whether any genuine issue of material fact remains for trial on the summary judgment record as it stands." Ortiz v. Santora, 223 F. Supp. 2d 387, 393 (D. Conn. 2002). "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule[.]" D. Conn. L. Civ. R. 56(a)(1).

### III. **DISCUSSION**

#### A. Facts

The following facts, which are set forth in defendants' Local Rule 56(a)(1) Statement, are accepted as true for purposes of this Ruling. The Court finds that these facts, which are not

contested by plaintiff, are supported by the record.

"Officer Wisdom was not involved in the use of force on October 21, 2019 giving rise to this lawsuit." Doc. #50-2 at 1. Plaintiff testified at his deposition that "all the defendants" attacked him "[w]ith the exception of Wisdom." Doc. #50-4 at 10. He was "not quite sure where" Officer Wisdom "was when the attack was going on." Id.

DOC has promulgated certain Administrative Directives ("AD") governing the process by which an inmate may seek "administrative review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." Doc. #50-2 at 1. "AD 9.6 requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form (Form No. CN 9601), prior to filing a formal grievance." Id.; see also Doc. #50-5 at 5-18 (copy of AD 9.6).

"For matters involving staff conduct, a Level-1 grievance must be submitted within thirty days" of the conduct complained of "and A.D. 9.6 provides that the appropriate correctional official has thirty business days to respond." Doc. #50-2 at 2; see also Doc. #50-5 at 10 (AD 9.6 Section 6(C)); Doc. #50-5 at 11 (A.D. 9.6 Section 6(I)). "If the inmate is not satisfied with the response to his Level-1 grievance, or no response is provided within the thirty-days, the inmate may submit a Level-2

appeal within five days after the level 1 disposition." Doc. #50-2 at 2 (emphasis removed); see also Doc. #50-5 at 11 (AD 9.6 Section 6(K)).

"A level 1 grievance relating to the incident at issue in this lawsuit was received ... on December 3, 2019." Doc. #50-2 at 2; see also Doc. #50-5 at 33-34 (grievance form dated November 15, 2019, marked as received December 3, 2019). "This grievance was denied on December 12, 2019." Doc. #50-2 at 2; see also Doc. #50-5 at 33 (grievance form indicating it was denied on December 12, 2019).

The Level 1 grievance form asserts: "On October 21, 2019 I was assaulted by Correctional Supervisor Lt. Visneau[.]" Doc. #50-5 at 33. The grievance does not allege that any other person was involved in the assault, or in any way in the incident. See id. at 33-34. That grievance is hand-written and signed by Sanders, and dated November 15, 2019. See id.

"Plaintiff did not file a level 2 appeal of this level 1 grievance." Doc. #50-2 at 2.

Plaintiff was transferred to Osborn Correctional Institution on October 21, 2019, the date of the incident, and remained there until his discharge to the community on September 17, 2020. See Doc. #50-5 at 3. All grievances filed by Sanders during his time at Osborn have been produced by defendants. See id. at 2-3 (sworn affidavit affirming that all grievances are

attached). No Level 2 appeal of the grievance related to the alleged use of force by Visneau was filed by Sanders. <u>See generally</u> Doc. #50-5.

    **B.    Analysis: Exhaustion of Administrative Remedies**

The PLRA "requires an inmate to exhaust" all available administrative remedies before bringing a civil suit "with respect to prison conditions." <u>Medina v. Somers</u>, No. 3:10CV00299(JBA), 2011 WL 2844301, at *2 (D. Conn. July 14, 2011) (citations and quotation marks omitted). "The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process." <u>Id.</u>

"[P]risoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court." <u>Gaston v. Doe</u>, No. 3:19CV00003(AWT), 2021 WL 66434, at *2 (D. Conn. Jan. 7, 2021) (citation omitted). A plaintiff "must <u>fully</u> exhaust his administrative remedies. The administrative directives provide that an inmate may appeal to level 2 if he fails to receive a timely response to his level 1 grievance or if his level 1 grievance is rejected." <u>Hosendove v. Myers</u>, No. 3:03CV00207(CFD), 2003 WL 22216809, at *2 (D. Conn. Sept. 19, 2003) (finding failure to exhaust where no Level 2

grievance was filed).

A plaintiff who files a Level 1 grievance will not be found to have exhausted his remedies if "he had not pursued the available remedy of filing a 'level two grievance[.]'" Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002); see also Ben-Israel v. Diaz, No. 3:18CV01723(VLB), 2019 WL 4738858, at *4 (D. Conn. Sept. 27, 2019) ("A grievance that is denied or rejected may be appealed to the next level. ... Thus, under the directive, plaintiff was able to appeal the rejection to Level 2 and was required to do so to complete the exhaustion process. Plaintiff failed to fully exhaust his administrative remedies before commencing this action." (citations omitted)); Morales v. Dzurenda, No. 3:07CV01220(CFD), 2009 WL 8695525, at *4 (D. Conn. Sept. 8, 2009), aff'd, 383 F. App'x 28 (2d Cir. 2010) ("Morales did not comply with the requirements of Administrative Directive 9.6 for filing a Level 2 Grievance in order to appeal the denial of the Level 1 Grievance. Thus, he did not properly exhaust his administrative remedies.").

Plaintiff filed a timely Level 1 grievance no later than December 3, 2019. See Doc. #50-2 at 2; Doc. #50-5 at 33-34. That grievance was denied on December 12, 2019. See Doc. #50-2 at 2; Doc. #50-5 at 33. Plaintiff did not file a Level 2 appeal. See Doc. #50-2 at 2; Doc. #50-5 at 3. Accordingly, plaintiff failed to exhaust his available administrative remedies as against any

defendant.

Summary judgment is **GRANTED** in favor of all defendants on plaintiff's excessive force claim.

### IV. CONCLUSION

The Court finds that defendants have established that no genuine issue of material fact exists as to whether plaintiff properly exhausted his administrative remedies. Defendants have further established that defendant Wisdom was not involved in the incident at issue. Accordingly, summary judgment is granted as to all remaining claims, against all remaining defendants.

Judgment shall enter in favor of defendants Minggia, Barnett, Canales, Doyle, Huff, Wisdom and Tyburski.

The Clerk shall close this case.

It is so ordered this 30th day of December, 2021, at New Haven, Connecticut.

                                      \_\_\_/s/_____
                                      HON. SARAH A. L. MERRIAM
                                      UNITED STATES DISTRICT JUDGE